UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-08536-SVW-MAR | Date | July 31, 2024 |
|---|---|---|---|
| Title | *Alsa Refinish LLC v. Walmart Inc.* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Derek Davis | | N/A |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| N/A | | N/A |

**Proceedings:** ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [21]

## I. Introduction

Before the Court is a motion for summary judgment brought by Walmart, Inc. ("Walmart"). Dkt. 21. For the following reasons, Defendant's motion is GRANTED.

## II. Facts[1]

Alsa Refinish, LLC ("Plaintiff") is a company that sells paint, including chrome paint. Dkt. 29 ("Opp.") at 2. Plaintiff alleges that in selling chrome paint, it has obtained common law trademark rights in the following marks: "Alsa," "Alsa Chrome Paint," "Alsa Easy Chrome," "Easy Chrome," "Mirrachrome," and "Mirra chrome" (collectively, "Plaintiff's Marks" or the "alleged Marks"). Dkt. 17, Second Amended Complaint ("SAC"), ¶¶ 32–37.

Walmart offers an online marketplace on its website (www.Walmart.com) through which both Walmart and third parties sell products to consumers over the Internet and in stores. Opp. at 2. Plaintiff has not found any infringing products on Walmart.com. Dkt. 27, Walmart's Statement of Uncontroverted Facts ("DF") 35. Indeed, neither Plaintiff, nor any other third party, sells or advertises

---

[1] All facts are undisputed or alleged by the nonmoving party unless otherwise stated. Further, all facts are viewed in the light most favorable to the non-moving party (i.e., Plaintiff), as required when resolving a motion for summary judgment. Nothing in this section should be construed as a factual finding. "To the extent certain facts or contentions are not mentioned in this Order, the Court has not found it necessary to consider them in reaching its decision." *Sarieddine v. Vaptio, Inc.*, 2021 WL 4731341, at *1 (C.D. Cal. June 15, 2021).

| | : | |
|---|---|---|
| | Initials of Preparer | DD |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-08536-SVW-MAR | Date | July 31, 2024 |
|---|---|---|---|
| Title | *Alsa Refinish LLC v. Walmart Inc.* | | |

Plaintiff's products on Walmart's website or stores under any of Plaintiff's Marks. Opp. at 2. Thus, a search on Walmart's website for Plaintiff's Marks results in search listings that are completely unrelated to Plaintiff's products. Mot. at 2; DF 59–64.

Nevertheless, Plaintiff contends that "Defendant is using Plaintiff's Marks in advertising [on Google] to drive customers to Walmart.com and Walmart's stores," and that if a "trademark in an advertisement is used in a manner that is likely to cause confusion . . . or is used to imply . . . affiliation between the trademark owner and the advertiser, then this use should be prohibited and . . . considered trademark infringement." Opp. at 3; SAC ¶¶ 39, 42–50.

Walmart pays for "keyword advertising on various search engines, including Google." Mot. at 8. Keyword advertisements are advertisements that appear in the search results when a user's search includes a "keyword" that the advertiser has bid on. Mot. at 8; DF 38. Search engines typically label Walmart's keyword advertisements as "ads" or "sponsored" (or label them under a similar moniker) to distinguish them from organic search results (i.e., Google search results that Walmart does not pay for). Mot at 8; DF 39, 70. In contrast to keyword advertisements, Walmart does not pay search engines to return organic search listings. DF 70.[2]

According to Plaintiff's SAC, Walmart has advertised on Google by using Plaintiff's Marks. SAC ¶¶ 42, 44, 46–50. To demonstrate, Plaintiff attaches various screenshots of Google search results. Dkt. 17, Exs. 15–21. The first two examples are reproduced below.

---

[2] Although Plaintiff originally disputed DF 70, it has now conducted further discovery and concedes that this fact is correct. *See* Dkt. 39 at 2.

:

Initials of Preparer         DD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-08536-SVW-MAR | Date | July 31, 2024 |
|---|---|---|---|
| Title | *Alsa Refinish LLC v. Walmart Inc.* | | |



Dkt. 17, Ex. 15.

: 

Initials of Preparer　　　　　　　　　　DD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-08536-SVW-MAR | Date | July 31, 2024 |
|---|---|---|---|
| Title | *Alsa Refinish LLC v. Walmart Inc.* | | |



Dkt. 17, Ex. 16. In the above screenshots, Plaintiff appears to contend that because a search for the term "easy chrome paint walmart" results in several sponsored links to products on Walmart.com along with a Walmart webpage named "Easy Chrome Paint," and a search for "walmart alsa easy chrome paint" results in a Walmart webpage named "Alsa Easy Chrome," Walmart is using the alleged Marks when advertising. SAC ¶¶ 42–45.

However, the only sponsored keyword content (advertisements that Walmart has paid for by "bidding" on a keyword) that the SAC identifies is from a Google search for "easy chrome paint Walmart"—as seen in Exhibit 15. Mot. at 11; Dkt. 17, Ex. 15. Indeed, Plaintiff admits that it has only found one example of paid advertising. Opp. at 2. Every screenshot Plaintiff provides consists of "organic search results" that Walmart does not pay for.

Further, the organic search results Plaintiff points to—e.g., the Walmart webpages named "Easy Chrome Paint" or "Alsa Easy Chrome" in Exhibits 15 and 16—are the same webpages one would arrive at by navigating to Walmart.com and entering the alleged Marks (e.g., "Alsa Easy Chrome") into Walmart's own search bar. Mot. at 5–7, 9–10. This happens because when a term is entered into the search bar on *Walmart's* website, the URL (i.e., the web address) for the Walmart search results page will often include the terms that were searched. DF 65. For example, when a user searches "Alsa Chrome Paint" on Walmart.com, the URL for the search results page is listed as follows: https://www.walmart.com/search?q=%22ALSA+CHROME+PAINT%22. Mot. at 5. A Walmart search

| | : |
|---|---|
| Initials of Preparer | DD |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-08536-SVW-MAR | Date | July 31, 2024 |
|---|---|---|---|
| Title | *Alsa Refinish LLC v. Walmart Inc.* | | |

results page such as this will periodically be "indexed" by Google so that the page appears on Google's own search results. DF 66; Dkt. 23, Declaration of Jeff Davis ("Davis Decl."), ¶ 7, Ex. 2. For instance, users might search for the term "basketball" on Walmart's website. This would produce a Walmart webpage with search results for "basketball." This same Walmart webpage could itself show up as a result on Google, e.g., for a Google search of the term "basketball Walmart." Thus, when a user searches certain terms on Google, Google's algorithm may show an indexed Walmart search results page. DF 67. If a user clicks on the indexed page, they are taken to a search results page on Walmart.com—as if the user had gone directly to Walmart's website to search for the term. DF 68. As such, a Google search for "Alsa Easy Chrome" and "Walmart" returns an indexed Walmart search results page which, if clicked on, takes a user to search results on Walmart.com for "Alsa Easy Chrome." Davis Decl. ¶¶ 8–9, Exs. 2–3; DF 67–68. Walmart does not pay Google to index any pages on Google's website. Mot. at 8; DF 69.[3]

Plaintiff notes that Walmart admits to paying for advertising using Plaintiff's Marks. Opp. at 1–2. Walmart explains that its process for bidding on keyword advertisements is generally completed by fully automated tools that analyze trends and user behavior to select relevant keywords. Mot. at 8; DF 41. In a single instance, Walmart's automated bidding system produced a "keyword" for the term "Alsa Chrome Paint." DF 52; Dkt. 25, Declaration of Matt Kennedy ("Kennedy Decl."), ¶ 16. However, there were no impressions[4] or clicks against the term "Alsa Chrome Paint," meaning that no one clicked on or even saw Walmart's advertisement. DF 53–54.[5] Moreover, Walmart has not paid Google for keywords advertisements for any other alleged Marks ("Alsa," "Alsa Easy Chrome," "Easy Chrome," "Mirrachrome," or "Mirra Chrome"). Kennedy Decl. ¶¶ 11–15; DF 42–51.[6]

---

[3] Although Plaintiff originally disputed DF 69, it has now conducted further discovery and concedes that this fact is correct. *See* Dkt. 39 at 2.

[4] According to Google's Help Center, "impressions" are how often someone saw a link to the advertiser's site on Google. https://perma.cc/TG9M-Q587. Under Rule 201, the court can—in response to a request from a party or on its own—take judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Fed. R. Evidence 201. Further, documents that appear on publicly available websites are proper subjects for judicial notice. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021).

[5] Plaintiff continues to dispute whether anyone saw or clicked a Walmart advertisement based on the keyword "Alsa Chrome Paint." *See* Dkt. 39 at 2. Plaintiff argues that Walmart produced a document in discovery that shows Walmart paid $0.45 for an advertisement with the phrase "Alsa Chrome Paint." *Id.* According to Plaintiff, this indicates that there were impressions or clicks for the phrase. *Id.* However, this merely means that Walmart bid $0.45 on the phrase "Alsa Chrome Paint," as it admits. Further, that same document produced by Walmart in discovery indicates that there were zero impressions or clicks for the keyword phrase. *See* Dkt. 39, Ex. 2. Plaintiff fails to point out any evidence to rebut this.

[6] Plaintiff disputes DF 42 (that Walmart did not purchase a keyword for "Alsa") by pointing out that Walmart bid on "Alsa

: 

Initials of Preparer  DD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-08536-SVW-MAR | Date | July 31, 2024 |
|---|---|---|---|
| Title | *Alsa Refinish LLC v. Walmart Inc.* | | |

On January 30, 2024, Plaintiff filed a second amended complaint ("SAC") bringing ten causes of action: (1) False Designation of Origin and Unfair Competition in Violation of Section 43(a) of the Lanham Act; (2) Unfair Competition and False Advertising Under California Business and Professions Code §§ 17200 and 17500 et seq.; (3) Violation of California Common Law for Trademark Infringement; (4) Declaratory Relief that Plaintiff owns the alleged Marks; (5) Trademark Infringement under 15 U.S.C. §1114; (6) Federal Trademark Dilution under 15 U.S.C. §1114; (7) Injury to Business Reputation and Dilution under California Business and Professions Code § 14247; (8) Common Law Passing Off and Unfair Competition; (9) Trade Name Infringement under California Business and Professions Code § 14415 and California common law; and (10) Injunctive relief in accordance with 15 U.S.C. § 1116.[7] SAC ¶¶ 60–127.

On February 12, 2024, Walmart filed the instant motion for summary judgment. Dkt. 21. Plaintiff opposed the motion on February 19, 2024. Dkt. 29. Walmart filed a reply thereafter. Dkt. 32. The Court heard oral argument on April 1, 2024, and took the motion under submission. Dkt. 35.

### III.   Legal Standard

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the factual record that] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its initial burden, the non-moving party must demonstrate with admissible evidence that genuine issues of material fact exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56 . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). "On an issue as to which the nonmoving party will have the burden of proof . . . the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun v.*

---

Chrome Paint." PF at 2. Plaintiff is wrong. Walmart bid on the term "Alsa Chrome Paint," which would only be triggered by a search containing the complete phrase "Alsa Chrome Paint." Walmart did not bid on the word "Alsa" by itself. And although Plaintiff originally disputed DF 43–51 (that Walmart did not purchase a keyword for "Alsa Easy Chrome," "Easy Chrome," "Mirrachrome," or "Mirra Chrome"), it has now conducted further discovery and concedes that these facts are correct. *See* Dkt. 39 at 2.

[7] Erroneously, the caption on the cover page of Plaintiff's SAC only lists four causes of action. SAC at 1.

| | : |
|---|---|
| Initials of Preparer | DD |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-08536-SVW-MAR | Date | July 31, 2024 |
|---|---|---|---|
| Title | *Alsa Refinish LLC v. Walmart Inc.* | | |

*Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Conclusory, speculative testimony in affidavits and moving papers in insufficient to raise genuine issues of fact and defeat summary judgment." *Id.*

A material fact for purposes of summary judgment is one that "might affect the outcome of the suit" under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although a court must draw all inferences from the facts in the non-movant's favor, *id.* at 255, when the non-moving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, [the] court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV.   Discussion

### A.   Trademark Infringement

To prevail on a claim of trademark infringement, Plaintiff must prove (1) that it possesses a valid mark, (2) that the defendant used that mark "in connection with the sale . . . or advertising of any goods," and (3) that the defendant used the mark in a manner likely to cause consumer confusion. *JUUL Labs, Inc. v. Chou*, 557 F. Supp. 3d 1041, 1051–54 (C.D. Cal. 2021); 15 U.S.C. § 1114(1)(a).

Plaintiff appears to advance two theories of consumer confusion: source confusion and initial interest confusion. SAC ¶ 90.

"Source confusion exists 'when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two ... marks or marketing techniques.'" *Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 673 F. Supp. 3d 1017, 1027 (D. Ariz. 2023) (quoting *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 825 (9th Cir. 1993)).

Initial interest confusion is caused by "the use of another's trademark in a manner calculated to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1062–63 (9th Cir. 1999) (internal quotations and citation omitted). In other words, initial interest confusion is caused by the diversion of consumers' initial interest. *Id.* "Although dispelled before an actual sale occurs, initial interest confusion impermissibly capitalizes on the goodwill associated with a mark and is therefore

| | : | |
|---|---|---|
| | Initials of Preparer | DD |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-08536-SVW-MAR | Date | July 31, 2024 |
|---|---|---|---|
| Title | *Alsa Refinish LLC v. Walmart Inc.* | | |

actionable trademark infringement." *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1025 (9th Cir. 2004) (citing *Brookfield*, 174 F.3d at 1057, 1062–63). "[B]ecause the sine qua non of trademark infringement is consumer confusion, when we examine initial interest confusion, the owner of the mark must demonstrate likely confusion, not mere diversion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011). Further, a plaintiff "must show that confusion is *likely*, not just *possible*." *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 938 (9th Cir. 2015) (emphasis in original).

The Ninth Circuit typically analyzes likelihood of confusion by utilizing the eight-factor test set forth in *Sleekcraft*. *Multi Time Mach.*, 804 F.3d at 936. However, the eight-factor test is "not particularly apt" in cases alleging that Internet search results create a likelihood of initial interest confusion. *Id.* This is because "the *Sleekcraft* test was developed for a different problem—i.e., for analyzing whether two competing brands' *marks* are sufficiently similar to cause consumer confusion." *Id.* (emphasis in original).

"*Sleekcraft* aside, the ultimate test for determining likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the goods." *Multi Time Mach.*, 804 F.3d at 937. Thus, "in the keyword advertising context [i.e., where a user performs a search on the internet, and based on the keywords contained in the search, the resulting web page displays certain advertisements containing products or services for sale,] the likelihood of confusion will ultimately turn on what the consumer saw on the screen and reasonably believed, given the context." *Multi Time Mach.*, 804 F.3d at 937 (internal quotations and citation omitted). Such a case "can be resolved simply by a[n] evaluation of the web page at issue and the relevant consumer." *Multi Time Mach.*, 804 F.3d at 937. "In other words, the case will turn on the answers to the following two questions: (1) Who is the relevant reasonable consumer?; and (2) What would he reasonably believe based on what he saw on the screen?" *Id.*

The first question is essentially the sixth *Sleekcraft* factor: the type of goods and the degree of care likely to be exercised by the purchaser. *See Multi Time Mach.*, 804 F.3d at 937 (quoting *Network Automation*, 638 F.3d at 1152) (explaining that "[t]he nature of the goods and the type of consumer is highly relevant to determining the likelihood of confusion in the keyword advertising context."). "In evaluating this factor, we consider the typical buyer exercising ordinary caution." *Multi Time Mach., Inc.*, 804 F.3d at 937 (internal quotations and citation omitted). "Confusion is less likely where buyers exercise care and precision in their purchases, such as for expensive or sophisticated items." *Id.* Moreover, "the default degree of consumer care is becoming more heightened as the novelty of the

| | : |
|---|---|
| Initials of Preparer | DD |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-08536-SVW-MAR | Date | July 31, 2024 |
|---|---|---|---|
| Title | *Alsa Refinish LLC v. Walmart Inc.* | | |

Internet evaporates and online commerce becomes commonplace." *Id.*; *Network Automation*, 638 F.3d at 1152.

As to the second question, the Ninth Circuit has found an additional factor outside of the eight-factor *Sleekcraft* test to be particularly important in evaluating trademark infringement claims on Internet search engines: "the labeling and appearance of the advertisements and the surrounding context on the screen displaying the results page." *Multi Time Mach., Inc.*, 804 F.3d at 936 (quoting *Network Automation*, 638 F.3d at 1148, 1154). "[T]he labeling and appearance of the products for sale on [the] web page is the most important factor . . . because . . . clear labeling can eliminate the likelihood of initial interest confusion in cases involving Internet search terms." *Multi Time Mach.*, 804 F.3d at 937. When considering the labeling and appearance of advertisements on a search results page, a court should include not only the text of the advertisements, but also their surrounding context. *Network Automation*, 638 F.3d at 1154. For example, in *Network Automation*, the Ninth Circuit found important the fact that Google and Bing "partitioned their search results pages so that the advertisements appear in separately labeled sections for 'sponsored' links." *Id.*

"[W]here a court can conclude that the consumer confusion alleged by the trademark holder is highly unlikely by simply reviewing the product listing/advertisement at issue, summary judgment is appropriate." *Multi Time Mach.*, 804 F.3d at 939.

Further, a court can conclude that summary judgment is appropriate "without delving into any factors other than: (1) the type of goods and the degree of care likely to be exercised by the purchaser; and (2) the labeling and appearance of the products for sale and the surrounding context on the screen displaying the results page." *Multi Time Mach.*, 804 F.3d at 939. *See also Brookfield*, 174 F.3d at 1054 ("[I]t is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors."); *Eclipse Assoc. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1118 (9th Cir.1990) ("These tests were not meant to be requirements or hoops that a district court need jump through to make the determination.").

Plaintiff alleges that Walmart infringed its trademarks through (i) Google's organic search results, and (ii) Google's sponsored results. As to Google's sponsored results, Plaintiff relies on the fact that (a) Walmart paid for the keyword "Alsa Chrome Paint," and that (b) a search for "easy chrome paint Walmart" results in advertisements to Walmart.com. Opp. at 3. Dkt. 17, Exs. 15–21. The Court will address these allegations in turn. For reference, the below graphic demonstrates the difference between "organic search results" and "sponsored results."

| | : | |
|---|---|---|
| | Initials of Preparer | DD |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-08536-SVW-MAR | Date | July 31, 2024 |
|---|---|---|---|
| Title | *Alsa Refinish LLC v. Walmart Inc.* | | |



Dkt. 17, Ex. 15 (modified).

: 
Initials of Preparer    DD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-08536-SVW-MAR | Date | July 31, 2024 |
|---|---|---|---|
| Title | *Alsa Refinish LLC v. Walmart Inc.* | | |

      **i. Organic search results**

    Because Walmart does not pay search engines to return organic search results or index webpages, it does not "use" the marks in connection with the sale or advertisement of goods. *Cf. Fin. Exp. LLC v. Nowcom Corp.*, 564 F. Supp. 2d 1160, 1173 (C.D. Cal. 2008) (finding that the purchase of search engine keywords using protected marks to direct consumers to defendant's website, along with the purchase of domain names containing the protected marks, constituted use "in connection with the sale . . . or advertising of any goods."); *Network Automation*, 638 F.3d at 1144 (assuming, without expressly deciding, "that the use of a trademark as a search engine keyword that triggers the display of a competitor's advertisement is a 'use in commerce' under the Lanham Act"). Instead, it is Google—not Walmart—that indexes and displays organic search results.

    To the extent that Plaintiff alleges that Walmart is responsible for the Google search results because of content on Walmart's website, that argument fails. The Google search results are simply Walmart webpages that contain search results themselves. Any user can produce this type of page by navigating to Walmart's website and typing a search term into the search box (i.e., searching for "Alsa Easy Chrome" on Walmart.com to produce a webpage with the words "Alsa Easy Chrome" in the URL). It is hardly surprising that a Google search for "walmart alsa easy chrome paint" returns an indexed search results page on Walmart.com for "Alsa Easy Chrome." *See* Dkt. 17, Ex. 16. Plaintiff does not show that the alleged Marks appear anywhere else on Walmart.com apart from where they are inputted as search terms. Walmart's website does not label any of its products under the alleged Marks or contain any infringing products. Ultimately, Plaintiff has pointed out no evidence that Walmart did anything to appear on these unsponsored Google search results. *Cf. Brookfield*, 174 F.3d at 1061 n.23, 1062 (finding that the defendant's inclusion of a mark in its "metatags"—HTML code not visible to web users but embedded in a website to attract search engines—was a "use" of the mark that created initial consumer confusion).

    Thus, Plaintiff's trademark infringement claim based on these unsponsored Google search results fails.

      **ii. Keyword advertisements**

        **a. based on Plaintiff's Marks**

    Walmart has not paid for keyword advertising for any of the alleged Marks apart from the term

| | : | |
|---|---|---|
| | Initials of Preparer | DD |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-08536-SVW-MAR | Date | July 31, 2024 |
|---|---|---|---|
| Title | *Alsa Refinish LLC v. Walmart Inc.* | | |

"Alsa Chrome Paint." Thus, there can be no trademark infringement claim for keyword advertising of the marks "Alsa," "Alsa Easy Chrome," "Easy Chrome," "Mirrachrome," and "Mirra chrome."

Nor is there a trademark infringement claim for the purchase of the keyword "Alsa Chrome Paint." Because keyword advertising for "Alsa Chrome Paint" did not produce any clicks or even any views, any use of the mark by Walmart did not "cause[] a likelihood confusion in the minds of the relevant consuming public." *See JUUL Labs, Inc. v. Chou*, 557 F. Supp. 3d at 1051. In other words, Walmart's unseen use of this mark could not have caused any consumer confusion whatsoever, let alone a *likely* risk of confusion. *See Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012) ("The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks.").

### b. on the search term "easy chrome paint Walmart"

Plaintiff's SAC does, however, show one instance of keyword advertising: sponsored links to products on Walmart.com for a Google search of the phrase "easy chrome paint Walmart." Dkt. 17, Ex. 15. Walmart states that these sponsored links are triggered by a query for the separate words "easy," "chrome," and "paint." Mot. at 11; Reply at 5–6. Walmart contends that the purchase of these Google advertisements does not constitute a "use" of Plaintiff's Marks. Reply at 6. The Court agrees. *See* Section IV-B *infra*.

But even assuming, *arguendo*, that Walmart "used" Plaintiff's Marks when it purchased these keyword advertisements (for the search phrase "easy chrome paint Walmart"), Plaintiff's claim for trademark infringement still fails. As a matter of law, Walmart's sponsored advertisements on the Google search for "easy chrome paint Walmart" do not give rise to a likelihood of confusion.

First, source confusion does not exist because, as Plaintiff itself admits, Walmart does not sell any products that infringe on Plaintiff's Marks—whether on its website or in stores. Therefore, no consumer purchasing a product from Walmart will incorrectly assume that the product is "associated with" Alsa Refinish. *See Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d at 825.

Turning to initial interest confusion, we begin with an analysis of the "type of goods and degree of care likely to be exercised by the purchaser." Although the parties have failed to address this factor, the Court notes that Plaintiff's "Easy Chrome" product ranges from $59.00 to $3,999.00, and that its

| | : | |
|---|---|---|
| | Initials of Preparer | DD |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-08536-SVW-MAR | Date | July 31, 2024 |
|---|---|---|---|
| Title | *Alsa Refinish LLC v. Walmart Inc.* | | |

"MirraChrome" product ranges from $396.00 to $5,996.00. https://perma.cc/A3BL-4PKR; https://perma.cc/SQC9-BC7M.[8] Like in *Multi Time Mach.*, which dealt with MTM watches that sold for several hundred dollars, the "goods in the present case are expensive." *See* 804 F.3d at 937. Further, chrome paint products appear to be specialized or even "sophisticated" items rather than everyday goods. *See Multi Time Mach.*, 804 F.3d at 937.

The relevant consumer is therefore "a reasonably prudent consumer accustomed to shopping online." *See id.* (quoting *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010)). "Unreasonable, imprudent and inexperienced web-shoppers are not relevant." *Tabari*, 610 F.3d at 1176. Because "[c]onsumers who use the internet for shopping are generally quite sophisticated about such matters," and because "the default degree of consumer care is becoming more heightened as the novelty of the Internet evaporates and online commerce becomes commonplace," such consumers are likely to exercise greater care. *See Tabari*, 610 F.3d at 1178; *Network Automation*, 638 F.3d at 1152. Thus, this factor weighs in favor of Walmart.

Next, we turn to "the labeling and appearance of the advertisements and the surrounding context on the screen displaying the results page." In *Multi Time Mach.*, a search for a watch company's protected trademark on Amazon's website yielded search results containing other brands of military style watches. 804 F.3d at 932–33. The Ninth Circuit found no "likelihood of initial interest confusion" to "a reasonably prudent consumer accustomed to online shopping" because "each product listed for sale [was] clearly labeled with the product's name and manufacturer and a photograph, and no product [was] labeled with [the protected mark]." 804 F.3d at 937–39.

In *Network Automation*, the Ninth Circuit emphasized how Google's partitioning of "sponsored" links and unsponsored search results could lessen consumer confusion. Reasonably prudent consumers accustomed to shopping online likely understood the difference between Google's "sponsored" links and its regular search results back in 2011—and undoubtedly do today. Subsequent caselaw confirms that the separate labeling and partitioning of sponsored results limits consumer confusion.

In *Sen v. Amazon.com, Inc.*, the plaintiff alleged that Amazon purchased a keyword for her

---

[8] Under Rule 201, the court can—in response to a request from a party or on its own—take judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Fed. R. Evidence 201. Further, documents that appear on publicly available websites are proper subjects for judicial notice. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-08536-SVW-MAR | Date | July 31, 2024 |
|---|---|---|---|
| Title | *Alsa Refinish LLC v. Walmart Inc.* | | |

protected mark for use in sponsored advertising, which diverted online traffic to an Amazon webpage displaying competing products. No. 16CV1486-JAH (JLB), 2020 WL 4582678 at *1 (S.D. Cal. Aug. 10, 2020), *aff'd*, No. 20-55857, 2021 WL 6101385 (9th Cir. Dec. 21, 2021). The court held that "even if potential consumers were to click on Amazon's keyword advertisement, this would be intentional and not due to confusion as the sponsored advertisements are clearly distinguishable from the objective search results." *Id.* at *6. This was because "[t]he labeling and appearance of Amazon's sponsored advertisements as they appear on the results page of Google . . . clearly label the [advertisements] as 'Ads' and associate the [sponsored] products with 'Amazon.com' to avoid any confusion with Plaintiff's [protected] mark." *Id.*

Finally, in *Boost Beauty, LLC v. Woo Signatures, LLC*, the court found no trademark infringement where the defendant's advertisement appeared among Google search results for the plaintiff's mark because (1) defendant's product was labeled as an advertisement and (2) featured a product clearly labeled as defendant's product with no reference to plaintiff's product. No. 2:18-CV-02960-CAS-EX, 2022 WL 409957 at *12 (C.D. Cal. Feb. 7, 2022). Thus, consumer confusion was "highly unlikely." *Id.*

We find the above cases instructive. Here, each Walmart product in Google's "sponsored" results is clearly labeled with the name of the product along with a photograph, just as in *Multi Time Mach.*, 804 F.3d at 937–39. *See* Dkt. 17, Ex. 15. The sponsored products are also labeled with the word "Walmart," much like the sponsored advertisements in *Sen. v. Amazon.com, Inc.* were clearly associated with "Amazon.com." *See* 2020 WL 4582678, at *6; Dkt. 17, Ex. 15. Further, none of the sponsored products make any reference to the phrase "Easy Chrome" or the other alleged Marks—like in *Multi Time Mach.*, 804 F.3d at 938–39, and *Boost Beauty*, 2022 WL 409957 at *12. *See* Dkt. 17, Ex. 15. Finally, the sponsored results are "clearly distinguishable from objective search results," *see Sen v. Amazon.com, Inc.*, 2020 WL 4582678, at *6, because "the advertisements appear in separately labeled sections" for "Sponsored" links. *See Network Automation*, 638 F.3d at 1154. Specifically, Google displays the advertisements in boxes at the top of the page, which are clearly distinguishable from the normal search results below. In fact, the appearance of the sponsored Google results is almost identical to the advertisements on Google in *Boost Beauty*.[9] *See* 2022 WL 409957 at *12; Dkt. 17, Ex. 15. In sum, it is highly unlikely that a prospective consumer looking for Plaintiff's "easy chrome paint" would be confused by Walmart's advertisements and unintentionally navigate to Walmart.com.

---

[9] The only difference with the advertisements on Google in *Boost Beauty* was that the boxes were labeled with the word "Ads" rather than the word "Sponsored." *See Boost Beauty*, 2022 WL 409957 at *12.

| | : | |
|---|---|---|
| | Initials of Preparer | DD |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-08536-SVW-MAR | Date | July 31, 2024 |
|---|---|---|---|
| Title | *Alsa Refinish LLC v. Walmart Inc.* | | |

Thus, the sponsored advertising that Plaintiff points to is not likely to cause consumer confusion because the advertisements on Google are (1) distinguished from organic search results and (2) clearly labeled without any reference to Plaintiff's products.

\* \* \*

Because Plaintiff's trademark infringement claim fails, several other claims fail as well.

Courts apply the same analysis when reviewing claims for trademark, false designation of origin, and unfair competition based on the same infringing conduct. *See* 15 U.S.C. §§ 1114, 1125(a). *See also E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288 n.2 (9th Cir. 1992) (noting that "the elements of infringement and unfair competition claims are essentially the same," and their respective rulings "stand or fall together"); *Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 70 F. Supp. 3d 1105, 1134 (N.D. Cal. 2014) ("To successfully maintain an action for ... false designation of origin [or] unfair competition under the Lanham Act or California law, plaintiff must show that it has a valid trademark and that defendant's use of the mark is likely to cause confusion."). Thus, claims (1) and (5) fail.

Further, the same analysis for the Lanham Act claims applies to Plaintiff's claims for unfair competition under both California statute and common law. *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (noting the Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."). Likewise, Plaintiff's claims for California common law trademark infringement are "substantially congruent" with Lanham Act claims. *Playboy Enterprises, Inc.*, 354 F.3d at 1024 n.10. The same is true of Plaintiff's trade name infringement claims. *See SunEarth, Inc. v. Sun Earth Solar Power Co.*, 846 F. Supp. 2d 1063, 1073 (N.D. Cal. 2012) (citing *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534–36 (9th Cir. 1989)) (noting that trademark and trade name infringement are analyzed under practically indistinguishable standards). Thus, claims (2), (3), (8), and (9) also fail.

**B. Trademark Dilution**

Plaintiff brings trademark dilution claims under both federal and California state law (claims six and seven)—which involve the same analysis. *See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008). "In order to prove a violation, a plaintiff must show that (1) the mark is famous and

| | : | |
|---|---|---|
| | Initials of Preparer | DD |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-08536-SVW-MAR | Date | July 31, 2024 |
|---|---|---|---|
| Title | *Alsa Refinish LLC v. Walmart Inc.* | | |

distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Id.*; 15 U.S.C. § 1125(c)(1); Cal. Bus. & Prof. Code § 14247.

Walmart's motion for summary judgment addresses the second element: whether it has used the alleged Marks in commerce. Mot. at 15–16. Although Walmart makes this argument in the context of granting summary judgment against the trademark infringement claim, both infringement and dilution claims are subject to a requirement of commercial use. For infringement claims, courts must consider whether the defendant's use was "in connection with a sale of goods or services." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005). Further, the "use of a mark . . . in commerce" language of the trademark dilution statute, 15 U.S.C. § 1125(c)(1), is analogous to the "use . . . in connection with the sale . . . or advertising of any goods" language of the trademark infringement statute, 15 U.S.C. § 1114. *See Bosley*, 403 F.3d at 676.

As previously stated, Walmart does not "use" the alleged Marks in connection with the sale or advertising of any goods when Google displays organic search results. *See* Section IV-A-i *supra*.

As for sponsored Google search results, Walmart's purchase of the keyword "Alsa Chrome Paint" cannot be a "use of [a] mark . . . likely to cause dilution" because no consumers clicked on or even viewed the advertisement. *See Jada Toys, Inc.*, 518 F.3d at 634; Section IV-A-ii-a *supra*.

Nor does Walmart "use" any alleged Marks when sponsored advertisements appear in a Google search for the term "easy chrome paint Walmart." Walmart did not purchase a keyword for the phrase "easy chrome. *See* DF 44; note 6 *supra*. Therefore, even assuming "Easy Chrome" were a protected mark, Walmart is not "using" it to intentionally direct consumers to Walmart.com. *Cf. Fin. Exp. LLC v. Nowcom Corp.*, 564 F. Supp. 2d at 1165, 1167, 1173–74 (finding "use in connection with any goods" when the defendant purchased a search keyword for plaintiff's protected trademark, "Finance Express").

Because Walmart does not use the alleged Marks "in commerce," Plaintiff's trademark dilution claims fail.

**V.     Conclusion**

For the foregoing reasons, Defendant's motion is GRANTED.

| | : | |
|---|---|---|
| | Initials of Preparer | DD |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-08536-SVW-MAR | Date | July 31, 2024 |
|---|---|---|---|
| Title | *Alsa Refinish LLC v. Walmart Inc.* | | |

**IT IS SO ORDERED.**

: 

Initials of Preparer          DD